Henry Barrett & others *vs.* Charles E. Parsons.

An upper mill proprietor of a more ancient mill on a watercourse has not a right, as against a more recent mill owner below, to use the water as his own con venience or interest may dictate, but is bound to use it in a reasonable and proper manner; and a jury may find the constant use of the water entirely by night, and a detention of it during the day, to be an improper and unreasonable use; and if so, the upper proprietor is liable in an action by the lower proprietor, although such use is in good faith, and with no design to injure the rights of others.

Action on the case commenced in this court, March 24, 1851, for obstructing the natural and usual flow of water, in a stream in Malden, to the injury of the plaintiffs' mill on the same stream below. At the trial before *Bigelow*, J. it appeared that the plaintiffs were the owners of a dyeing mill in Malden, situated on a stream flowing from Spot pond, and Eel pond; the defendant was the owner of a grist mill, a short distance above the plaintiffs' works, and the injury complained of was that from the first day of June, 1850, to the date of the writ, the defendant shut down his gates every morning, and detained the water during the day to fill his own pond, and began to use and let down the water late in the afternoon of each day, and continued to run during the whole or greater part of the night, shutting down again the next morning, and so continuing to do from day to day; whereas, if he had let down continually during the daytime, only a part of the water, the plaintiffs would have had suf ficient to run their works during each entire day. The defend ant, in addition to the general issue, claimed the right to use

the water in such manner as his interest or convenience dictated.

The plaintiffs introduced no documentary evidence of title to the premises described in the writ, but proved by parol that they, and their father, William Barrett, had occupied the same premises for more than forty years, in carrying on their present business. The defendant admitted that the plaintiffs owned the land where their mills were situated, and a privilege to use the water for their mills, but to show that this was a limited privilege, the defendant offered the following deeds, namely, 1. A deed from Samuel Tufts to William Barrett, the plaintiffs' ancestor, dated March 19, 1803, of about one acre of land on Mill lane, and the Reading road, and east of said Tufts's new mill, " with a right to the free use and benefit of the water, as it runs in the brook, but not in any way to obstruct the passage." At the time of this conveyance, said Tufts owned the mills, dams, and water privileges now owned by both parties to this suit, and said deed conveyed a piece of land situate below said grantor's mill.

2. A deed from said William Tufts to George Odiorne and others, dated October 2, 1806, of lands, mills, and mill privileges, now owned by the parties to this suit, and situated above and adjoining the premises conveyed to William Barrett, March 19, 1803, as aforesaid, and conveying also " the right to the mill stream running from Spot pond, and the waters of said pond, except what I have conveyed to Mr. Barrett."

3. A deed from George Odiorne and others to said William Barrett, dated April 16, 1810, of a part of the premises bought of William Tufts, as aforesaid, and described as " a parcel of land with the privileges and appurtenances thereof, with our right in the mill-dam, grist-mill, and buildings thereon, in Malden, with the right of flowing the water in said mill-pond to the heighth of the street on the bottom of said Odiorne's new factory water-wheel, where the grist-mill stood, and a right to flow six inches higher when there is an overflow of water at said factory, provided the weather is not so cold as to freeze under said water-wheel to the injury of the factory."

At the time of this last conveyance, there was a grist-mill on the premises, as stated in said deed, and also a more ancient mill above, on the premises now owned by the defendant, and both were in operation at the time of said conveyance.

At the trial, the plaintiffs expressly disclaimed any right to damages for the defendant's omission to open the gates and let down the waters of Spot pond, and claimed damages only for the detention of the water flowing into the stream below said pond, and from other sources.   They admitted also that the defendant's mill privilege was more ancient than that of the plaintiffs.   It was also in evidence, that from 1810, until the defendant's purchase, about three years before the date of the writ, the works at the defendant's privilege were regularly used and in operation, (except during a short period, when they were destroyed by fire, and sometimes for a day or two, while repairing the mills, or in a very dry time,) and that whenever they were used at all, they were used in the day time.   If there was a surplus of water, they sometimes ran during the night, or a part of the night, after they had run during the day, but had never run during the night, and stopped during the day.   The works of the plaintiffs require less water than those at the same place in 1810, and whenever any works are in operation at the defendant's place, there is an ample supply of water at the plaintiffs' works.   It appeared that when during the dry season, the plaintiffs and their grantors were short of water at their mills, the owners and occupiers of the defendant's premises, were accustomed to let down the water at their request.

The defendant contended and offered evidence to show that he and those under whom he claimed, by an adverse user of twenty years and upwards, had acquired the right to use the water at said upper mill, at such times and in such manner as to prevent the plaintiffs from running their mills, except at such times as the owners of the upper mills saw fit to let the water down through their gates, and that during the time alleged in the writ, he had used and run his mills in the same manner as they had been run and used uninterruptedly and

without objection for twenty years and upwards, previously, by himself or those under whom he claimed. Evidence was of-fered by the plaintiffs to rebut this, and the whole testimony upon this point was submitted to the jury, with instructions which were not excepted to by either party, and with direc-tions to the jury that if they found such user to have existed, as claimed by the defendant, the plaintiffs were not entitled to recover. Much evidence was also offered upon both sides as to whether the defendant had used his mill in a reasonable and proper manner, for the usual, necessary, and ordinary pur-poses of his business; or whether it had been used by him in an unreasonable, irregular, and wanton manner, and not for the necessary prosecution of his business, by running the same in the night time, and shutting it down in the day time, as be-fore stated, all of which was submitted to the jury.

The defendant requested the presiding judge to instruct the jury:

1. That the deed of 1810, from the Odiornes to William Bar-rett, conveyed nothing in terms but the land described, with the appurtenances—the mill-dam, grist-mill, and buildings thereon—and that neither the right to have the water of the stream run and flow in its usual natural and accustomed course to the plaintiffs' mills, nor the right to have the water at the defendant's dam and mills used and let down to the plaintiffs' mills, as now claimed by the plaintiffs, passed either as incident to the estate granted, or by implication.

2. That the defendant, being the owner of the upper mill, has the right to use the water at his dam for the working of his mills, in the prosecution of his regular and ordinary busi-ness, during such part or portion of the day or night, or both, as might be most beneficial to him, and convenient to those for whom he did business at his mills—he acting *bona fide*, and with no intent to injure or incommode the plaintiffs—and that he was not bound to use the water at his mills during such parts or portions of the twenty-four hours as the interest or convenience of the plaintiffs might require.

The presiding judge did not give these precise instructions, not deeming them in all respects applicable to the case, but did

instruct the jury substantially as follows: That by the deed of Samuel Tufts, of March 19, 1803, to William Barrett, the plaintiffs' ancestor, they acquired a right to the free use and benefit of the water as it then flowed in said stream, for the purpose specified in said deed, without any right to obstruct its passage, and subject to such rights and use of the water above the land thereby conveyed, as then existed upon said stream. That under the deed of 1810, from the Odiornes to William Barrett, as the Odiornes then owned both privileges on said stream, the one now owned by the plaintiffs, and that now owned by defendants, the rights of the parties were mainly derived; that the deed itself did not contain any precise and definite limit by which the rights of the grantee to the use of the water were to be ascertained and controlled; that the grantee under said deed took a right to such use of the water as then appertained and belonged to the mill and premises thereby conveyed; and that it was a question of fact in this case for the jury, upon the evidence, to determine what did in fact appertain and belong to the premises conveyed by said deed, to be ascertained by the nature and extent of the use of the water as it was shown to have existed at said mills at and previous to the date of said deed; that in the absence of any express limit or regulation to the use of the water in the deed, the rights of the parties thereto must depend (unless modified by subsequent usage) upon what was shown to have been the usual, common, and ordinary use of the water at the respective mills of the parties, at and previous to the time of said grant.

That the defendant, in the absence of any evidence showing a paramount right to the use and control of the water by the owners of the mills and dam now owned and occupied by him, had no right to detain or hold the water back, and let it down at improper times and seasons, and in an unreasonable manner, so as to injure the plaintiffs, and prevent them from using and driving their mills and works at proper times and in a reasonable manner. That where mills were situated on the same stream, one above another, those which were lowest on the stream necessarily took the water subject to the previous

rights of those above to use and employ it for their mills and works, and to do all that is necessary and usual for the purpose, by building dams, and forming mill-ponds, and erecting gates, and such other structures and apparatus as may be convenient and proper; but that the owners of mills, situated above other mills upon the same stream, were bound to use and employ the water in a reasonable and proper manner, conformably to the usages and wants of the community, and not inconsistent with a like reasonable and proper use of it by others on the same stream below. And if the jury were satisfied on the evidence, that there was no paramount right in the owners of the upper mill and dam, as against the plaintiffs, to use and control the water, at and previous to the date of the deed to the plaintiffs' ancestor, and that none had been acquired by subsequent user; and if the jury were further satisfied that the defendant had not used the water in a reasonable and proper manner, for the regular prosecution of his business, but during the time alleged in the plaintiffs' writ, had used it unreasonably, wantonly, and unnecessarily, by running his mill at unusual and unreasonable hours, and holding back the water, and letting it down to the plaintiffs' works at improper times of the day and night, so that the plaintiffs were thereby deprived of the reasonable, ordinary, and proper use of their mills, and were thereby injured, they would be entitled to recover such sum in damages as they had shown to have been sustained by them in consequence thereof.

The jury returned a verdict for the plaintiffs. The case was reported for the consideration of the whole court.

*E. Buttrick*, ( *A. H. Nelson* with him,) for the defendant.

*B. Dean*, ( *R. Choate* with him,) for the plaintiffs.

BY THE COURT. The rulings of the presiding judge, upon the case presented, were correct, and the legal principles that were to govern the jury in deciding upon the maintenance of the action, were in accordance with the law as held in the prior decisions of this court. *Judgment on the verdict.*